Scott, C.J.
The defendant in error, who was plaintiff below, claims that the mortgage of the plaintiff in error creates no valid lien, as against the general creditors of his intestate’s estate; because it was not recorded till after the death of the mortgagor. Secondly, That said mortgage is void, for vagueness, and uncertainty in respect to the debts intended to be secured, and which were in existence at the time the mortgage was executed.
In regard to the question first presented, it is very clear that the recording of a mortgage is no part of its execution, and is, therefore, not necessary to give it validity as against the mortgagor, or as against his heirs or devisees. Fosdick v. Barr, 3 Ohio St. Rep. 471; Sidle v. Maxwell et al., 4 Ohio St. Rep. 236. But the defendant in error, conceding this, claims, that at the moment of Pinney’s death, a lien in favor of his creditors, was created, by act and operation of law, upon all his real estate; and that as against this lien, a mortgage, not recorded till eight hours afterward, is wholly void.
The correctness of this claim must depend on the nature of the lien which thus attaches in favor of general creditors. We suppose it to be, neither more nor less, than the right which the law gives to the creditors, upon a deficiency of personal assets, to subject to the payment of the debts due them, the real estate, the ownership of which has passed by the death of their debtor, to bis heirs or devisees. The heir takes the land subject to the payment of the ancestor’s debts; for he occupies the position of a volunteer; nor do purchasers from the heir take the land discharged from this liability; for they are chargeable with notice of the character of their grantor’s title, as heir; and only stand in his shoes. This right which thus follows the real estate, may, therefore, very properly, be called a lien upon it, as against the heir or devisee, and those claiming under them. And, so far, its equity is quite apparent.
But can this contingent lien of the mere general creditor, *47 equitably go farther ? Can it take precedence of a Iona fide specific lien, which bound the lands in the hands of the debtor, up to the moment of his death; and, descending with the land to the heir, remained equally binding upon him ? A creditor acquires no specific lien by his debtor’s death. If he was a mere general creditor before the death, he remains such after it. His position with respect to other creditors remains unchanged. He and they have the same right, through the intervention of an administrator, to subject to the payment of their debts, if necessary, all the property of their debtor, .which has passed to his heirs, devisees or legatees. This right, which constitutes the lien in question, is acquired by no act of diligence on the part of the creditor; it arises from no act of the debtor, but results merely from the act of God. It attaches with the change of title, and in consequence of such change. The lien must, therefore, be limited to the property which passes; and to that, in the condition in which it passes. If lands descend to the heir charged with an in cumbrance created by the act of the ancestor, the lien of the general creditor must attach to it in the same cohdition. The lien is occasioned by the descent cast, and the extent of the effect must be limited by that of the cause,
The statute which permits lands which the deceased may have conveyed, with intent to defraud his creditors (and which do not therefore descend to the heirs) to be sold by the administrator for the payment of debts, forms no exception to the principle which we have stated. For this right of the creditors, is a very different thing from the lien which we are considering. It can only be enforced against the fraudulent vendee, or his assignee with knowledge of the fraud. And it is a right which is not created by the death of the debtor, but existed during his life in favor of the creditors, and is merely continued to the adminstrator as their trustee, after his death.
At common law, the death of the debtor gave no lien upon his lands to the creditors. The personalty alone became assets in the hands of the administrator. The lien in question is the creature of the statute. It can be enforced by the ad *48 ministrator only upon the order of the proper court, the op6 ration of which is in the nature of a judgment or decree, against the heirs. They must either pay the debts or permit the lands to be sold. The statute directs the money arising from the sale to be applied as follows : “ First — To discharge the costs and expenses of the sale and the per centum and charges of the executor or administrator thereon, for his administration of the same. Secondly — To the payment of mortgages and judgments against the deceased according to their respective priorities of lien, so far as the same operate as a lien on the estate of the deceased at the time of his death,” etc. S. & C. St. 594, § 148.
The mortgage in question was valid “ against the deceased,” if not void for uncertainty in respect to the liabilities intended to be secured, and “ operated as a lien on the estate of the deceased,” till his death; and still remained operative against the same estate in the hands of the heir.
It is not necessary to say what would have been the effect of a failure to record this mortgage, until after an order of sale had been obtained against the premises. It is enough to to know that the want of notice could not affect the administrator till after his appointment.
We think the construction long since given to the statute by which unrecorded mortgages are held void as against subsequent judgment creditors, and mortgagees with actual notice, is sufficiently stringent, and are satisfied that the reason of the statute does not require us to go farther.
The second objection taken to the mortgage in this case on account of vagueness and uncertainty in respect to the debts intended to be secured, is disposed of by the case of Hurd et al. v. Robinson et al., 11 Ohio St. Rep. 232. That case, reported since' the argument of the present one, decides th< question against the plaintiff below.
We think the judgment of the court below must be reversed, the demurrer to the petition sustained, and the petition dismissed.
Sutliee, Peck, Gtiolson and Brinkerhoee, J J., concurred